The next case on our docket is 24-60242, Apple Inc. v. National Labor Relations Board. Mr. Knievel. Thank you, Your Honor. May it please the Court. This appeal presents two issues. The first is a conversation between an Apple manager and one of her employees about work-related issues weighing on his mind. The Board called this casual exchange a coercive interrogation. That's issue one. The second issue is the discarding of union flyers from the Apple break room. I plan to address both issues in my argument today, but I'll start with the conversation first. We have two independent arguments for reversing the coercive interrogation finding, and the Court need only agree with us on one of them to rule in our favor. The Board's first reversible error was finding that the conversation was objectively coercive. No one disputes that for the NLRA to prohibit a workplace conversation, it must at least have a tendency to coerce objectively reasonable employees with respect to their statutorily protected rights. There was no objective coerciveness here. The second ground for reversal is the Board's cursory rejection of the Supreme Court's mental state requirement for regulating threatening speech. The Board rejected the Supreme Court's recent First Amendment decision in Counterman v. Colorado as categorically inapplicable to federal labor law, and it did so on thin reasoning that doesn't hold up to scrutiny. But before we get to Counterman, the Court should reject the Board's conclusion that the conversation here was objectively coercive. Upholding the Board's finding on this score would expand the notion of coercive interrogation to extremes that are inconsistent with this Court's case law. This is an unusual coercive interrogation finding because several key facts are not in dispute. First, there's no dispute that there was no background of employer hostility or discrimination against the union, nor were there any prior unfair labor practices at the time this conversation occurred. There also was no threat of reprisal. In fact, just the opposite, and this distinguishes this case from a lot of the cases that the Board relies on. In the conversation, even on Vasquez's account of it, Gladden assured him that Apple would do the right thing with respect to the union, and he agreed. Moreover, the conversation was part of the manager's routine practice, conducted out in the open sales floor in public view. It wasn't behind closed doors or otherwise made in ominous or concerning setting. And importantly, it involved only general questions that naturally responded to concerns that Vasquez himself had already raised with management. He had raised concerns about pay at Apple, not only with respect to his own pay, but with respect to a lot of employees, and he was having conversations with his fellow employees on wages on a daily basis, according to his testimony. And after he had a meeting with management about those concerns, Gladden started the conversation by asking, on his account, how that discussion with management had gone. Now, the Board suggests that the questions here weren't general and were instead concerning because they asked about Vasquez's feelings. But that conclusion contradicts this Court's ruling in Delco-Remy v. NLRB, where this Court found very similar questions involving three employees, not just one, to be general and innocuous and not a coercive interrogation. And those questions included, how did the employee feel about the union? And even more pointedly than any of the questions here, why the employee felt so strong about the union. Ultimately, in this case, the Board places dispositive weight, I would say, on Vasquez's decision to keep his pro-union views secret. But there are two major problems with this argument. First, the reason why an employee's response is considered in this analysis is because it can suggest that the employee feared reprisal by the employer, was afraid of repercussions for answering the employer's questions honestly. But the facts here show Vasquez's motivation for not responding truthfully to the question. It wasn't that he was afraid of being known as a union supporter because only six days later he became a very visible union supporter. Instead, he wanted to keep his union involvement under wraps for the time being so that the public campaign could be launched on a date of the union's choosing. The second problem with focusing so much on the employee's subjective reaction is that, as the Board itself argues, the main focus on this part of the analysis is whether the interrogation was objectively coercive. Maybe a subjective reaction by an employee provides some attenuated circumstantial evidence of whether the discussion was actually coercive, but it can't be dispositive and it can't bear the weight that the Board put on it here. As a more general practical matter, the employee's subjective response isn't something that the employer has any control over. It was up to Vasquez whether to tell Gladden that he didn't want to discuss the union or to respond with an outright falsehood. That choice standing alone doesn't reasonably have any connection to the objective characteristics of Gladden's question. And I'd note further that in some cases, the Board here suggests that we might have a different case, we'd be really close to Delco Remy and Federal Mogul if the employee had just said, I don't want to answer your questions. But in other cases, the Board has argued, and this Court has accepted, that refusal to answer can itself be evasiveness that gives rise to an objective coercion finding. So this factor, if it's considered at all, can only be given very minimal weight. And here I don't think, given the evidence of Vasquez's true motivation, can bear the weight that the Board gave it. To the extent the Board relies on Gladden's position as a senior manager, it's important to note that that's the second lowest level supervisor in the Apple store. And in Delco Remy, again, only two of the three supervisors there were lower level supervisors, and this Court still found that there was no objective coercion reversing the Board. In the Second Circuit case that we cite, Bozudo's versus NLRB, the questions there were by the company's senior vice president. So much more higher in the company hierarchy than the manager here who was accustomed to having these types of interactions with her employees. So on these facts, even more so than in Delco Remy and Bozudo's, a coercive interrogation finding comes close to creating a per se rule that no manager can ask an employee any question about ongoing union activity. That is not the law under this Circuit's cases or other Circuits' cases. Let me briefly touch upon our second ground for reversing the coercive interrogation finding, and that's the argument based on Counterman versus Colorado. I'd submit that at a minimum, if the Court doesn't just simply agree with us on the objective coerciveness arguments that I just discussed, the Court should vacate and remand the Board's decision about Counterman for further consideration because a lot of the arguments that the Board makes on appeal weren't the basis for the Board's decision, and the arguments that the Board actually adopted below are not capable of withstanding scrutiny. The Board first suggested that Counterman might properly be confined to criminal prosecutions, but that statement in the Board's footnote in this case makes no sense because Counterman itself drew on both civil liability cases involving civil defamation. Has it been applied in any labor relations context? No, I think there's not a single court of appeals that has addressed whether Counterman applies yet in the labor context. There have been cases, we cite the Wisconsin Supreme Court case, that have refused to limit Counterman to criminal liability. That's the Kinchy versus Eich case. I'm not sure if I'm pronouncing that correctly, but we cite that in our reply brief. There the Wisconsin Supreme Court noted that Counterman drew on civil liability cases and it wouldn't make sense to confine Counterman to criminal liability. But to Your Honor's question, no, I don't think any courts yet addressed Counterman's applicability or not in the NLRA context. The Board's second point was that Counterman didn't have any indication that it was meant to extend to the NLRA, and I don't really get that argument because the NLRA is, of course, a statute that's confined by the First Amendment like any other statute and in fact adopts the First Amendment in Section 8C. So if the Counterman applies to civil cases, it should apply to civil cases under the NLRA just as any other statute. And then finally, the Board cited the Supreme Court's 1969 decision in Gissel as a reason for rejecting any subjective requirement. And the problem there is that nothing in Gissel squarely addresses whether the inquiry is purely objective or purely subjective. And if anything, there are statements in Gissel that suggest it does have some subjective component because Gissel supports and endorses looking at what the speaker intended, what the intended import of the speaker's message was, and whether the employer engaged in conscious overstatement. Those are all, I don't know how to interpret them any other way, aspects of a speaker's mental state. So at a minimum, I would suggest that the Board's analysis on Counterman is insufficient and requires further elaboration on remand if the Court doesn't simply... Do you want to pivot from coercive interrogation to the confiscation and removal of flyers? Yes, thank you, Your Honor. That's exactly what I was about to do. The Board here concedes, I think, the basic legal point that we're relying on, that the NLRA doesn't prohibit removing union flyers pursuant to a consistently and non-discriminatorily applied housekeeping policy. On page 48 of their brief, they cite the Fourth Circuit's Intertake Polymer case for that proposition. And I think that that principle should be the end of the dispute because there's no evidence, and certainly not substantial evidence, that Apple applied its policies in the break room inconsistently or discriminatorily under this line of cases. I thought there was evidence they just picked up the flyers and left other things out. So the ALJ cited some water bottles that were left out and a fruit basket that was left out on May 15th, which was the first day of the flyers controversy. And I would submit that neither of those is comparable. The whole point of a fruit basket, obviously, is to be left out so that employees can take the fruit inside. And it's not obvious when water bottles on a table where employees are sitting are still in an employee's possession or have been left out. The employees here both testified that it was understood that employees are responsible for cleaning up after themselves after using the break room. That's at AR 69 and 151 and 52. And the video evidence showed that employees did generally follow this rule. And in addition, cleaning crews came in regularly through the break room and did a reset of the break room overnight. The only unattended items that were not taken away were the fruit basket and water bottles? On the day in question, those were the ones that the board identified, yes. There was no evidence in the video that other printed material, like coupons or whatever, on May 15th were left out. There have been a few anecdotal examples given by the employees of Shake Shack coupons that was, as Mr. Vasquez said, that only happened once with Shake Shack coupons on AR 94. And then there were other anecdotal examples of supervisors removing restaurant menus and coupons. So you have some going both ways on coupons and the like, but there was no flyer or anything comparable that was left out on the break room table. And, in fact, the ALJ doesn't really discuss this, but I think it's pretty significant that just within about a week or so before May 15th, two of the Apple witnesses who testified, Waleed Abdullal and Yanell Brown, had enforced the no solicitation and distribution policy with an employee, Andrew Gobel, who was leaving flyers sitting out in break areas and elsewhere in the store to advertise a going-away party. So nothing having to do with concerted activity. Just an employee who was leaving Apple and about to have a party celebrating his going away. He wanted to leave out those flyers, and he was told he couldn't do that by both of these supervisors. And that was, again, just about a week or so before the union flyers incident. So just to note, the ALJ suggested that this evidence maybe was not reliable, but it was corroborated by a contemporaneous text message, and that's at AR-495-96. So that event happened, and it shows that Apple wasn't simply refusing to permit employees leaving their flyers out on the table in response to the union activity, unlike the Intertate Polymer case and some of the others that the board cites, where it seems like there really was a genuine shift in the employer's policies in response to the union activity. That is not what the record here shows. And it's worth noting that union supporters had various other opportunities to communicate their views that Apple made no effort to curtail. There's no dispute that the union supporters here were free to hand out flyers to fellow employees. They just couldn't leave them out on the table. 170 to 171 of the AR supports that. And while the ALJ suggested that the supporters here didn't do so, Vasquez himself testified that on May 15th he handed out flyers outside the Apple store at AR-41. And there's no dispute as well that he handed out red bracelets for the union without restriction. That's at AR-82. A couple of the other points, just very briefly, that the ALJ seemed to find troubling were the fact that the manager photographed the flyers at their first appearance on May 15th. But there's testimony about that as well. AR-333 and 354, supervisors were nervous about removing union materials because they understand that it implicates concerted activity, and they didn't want to do something that was going to get the company in trouble, so they had to run it up the chain. But that's not evidence of discrimination. That's just proceeding carefully, as the statute allows. Unless your honors have any other questions, I will reserve the rest of my time for rebuttal. Good morning, and may it please the court. Joel Heller for the National Labor Relations Board. The board's finding that Apple coercively interrogated an employee and unlawfully confiscated union flyers from the break room applied established precedent and principles. But Apple asked this court to abandon them. Apple asked this court to ignore Supreme Court precedent and essentially to overrule prior decisions of this court, which have, for decades, applied substantial evidence review to interrogation findings and have used an objective standard that does not require evidence of the employer's subjective intent to coerce. Under the board and this court's standard for a coercive interrogation, the question is whether, quote, under the totality of the circumstances, the interrogation reasonably tends to restrain or coerce, sorry, restrain or interfere with employees in the exercise of their rights under the act. And substantial evidence supports the board's finding that Gladden's questioning of Vasquez fit within that standard. On appeal, Apple is essentially asking the court to reweigh the evidence. It's looking at, well, these factors were present, these factors weren't present. Apple thinks it should come out in favor of no interrogation, but the board found, weighing those factors, that it fits within the factors that the board and this court consider for finding an interrogation. And of course, as this court well knows, the review of an appellate court is not to reweigh the evidence or to think how it would come out de novo, but to ask whether the board's finding was supported by substantial evidence. So look at the factors that the board considered. The nature of the information sought was clearly about activity protected by the National Labor Relations Act. It was advocacy for higher wages, along with fellow employees. It was views on union efforts. These questions were made by the employee's direct supervisor, who was just one level below the store leaders. But I think the important thing, Apple calls her low-level, but she's also his direct supervisor. And of course, there is a power dynamic there that the courts and the board have recognized when it is the person who has direct control over your day-to-day working life. Questions that person asks you can have an objectively considered a coercive impact. Also, it's important that Vasquez was not an open union supervisor at the time, sorry, an open union supporter at the time, and that he answered evasively or untruthfully. And all of these factors that the board considered, as we point out in our brief, are factors that this court has also found to be support of finding of coercive interrogation. And on the flip side, the factors that were not present in here, a history of unfair labor practices, a questioning occurring in an unusual closed room or something like that, there are also Fifth Circuit cases where those factors are absent, and the court has found that there was a coercive interrogation affirming the board's finding. So on both the factors that are present and the factors that aren't, there's Fifth Circuit precedent supporting board findings of coercive interrogation. The facts in this case are not unusual. It's not an expansion of the coercive interrogation doctrine. It is in line with how the board and the court for decades have reviewed these kind of cases. The fact that Gladden ended the encounter by saying, Apple will do the right thing. Now, I'm not quite sure what that means. She did not say that Apple would do the right thing with respect to unionization, as Apple counsel says today. It simply said Apple would do the right thing. Vasquez says, I agree. I'm not quite sure what that was about, but it does not count as the kind of assurance against reprisal that would weigh against a finding of interrogation. This is... Right. This, again, is, I don't want to say, completely run-of-the-mill. All these facts, you know, this is a totality of the circumstances case. The facts are going to be different in every case, but it is not a particularly unusual case, as Apple would have it. But it seems that the... It is totality. Yes. Cases are different. But it does seem that a whole bunch of the cases that are in your brief are noted by... There was a history of anti-union animus. There were explicit threats of reprisal. There was repeated aggressive sort of probing by the employer. None of that seems present here. So in some cases, there was that evidence, but in some cases, there wasn't. There was no explicit threats accompanying the interrogation in Renew Home Health from just last year, in Aero Corp. In some of the other older cases, there were threats and interrogations, but they weren't the same encounter. Tampa Tribune, for example, which was a case where the employer had raised a First Amendment argument, and the court nevertheless found that there was... It was only the single conversation in this case. In this case. The Gladden-Vazquez conversation. That's correct. And Gladden told Vazquez that he was permitted to talk about and engage in unionization. Well, we disagree with that, but I will allow you to finish your question. No, no, no. That was really just noting that.  Well, that is actually not part of the credited testimony. I know Apple makes a lot of it in their brief, but Gladden testified that she said that, that you're allowed to do these things, but Vazquez's testimony, which was the one credited by the administrative law judge, the judge, with respect to that particular statement, said Vazquez's testimony, quote, did not include these statements. And even though she credited Vazquez over Gladden, she pointed out that he did not say that she said that. So that's my first response. My second response is there's an older Fisker case called Harbison, which is pretty similar. We cited in the brief. The employer had said to the employee, who's signing all these union authorization cards? You can sign an authorization card if you want to. And the court said that second part of the interaction didn't erase the coercive impact of the first part of the interaction. In there are other cases, I believe it's also AeroCorp, where it was just a single employee, one interrogation, one instance with a single employee, and the court found, supporting the board, that there was a coercive interrogation there. So, again, the fact that there are some factors that are present and some that aren't present isn't enough to overrule the board's decision on appeal. The court has multiple times said, in these factors that we analyzed, not all of them have to be present in every case. The board doesn't have to go through and find everyone in every case. UNF West says that, just as one example. Many of this court's decisions say that. To the counterment point, the problem with their counterment argument is that it goes against precedent of this court and the Supreme Court, which have applied an objective test, both as to the employee's objective response and as to the employer's. So what would these interrogations, what would these questions reasonably tend to restrain or interfere? And that is an objective standard, reasonably tend. And in Gissel, the Supreme Court... So the underlying decision had been, the board found a violation based on what the employer's communications reasonably tended to convey to the employees. And at the Supreme Court, it said, it noted that that was the board's finding and said, we see no need to tamper with the standards used below for evaluating the impact of an employer statement. It talks about how any assessment of the scope of employer expression must be made in the context of its labor relations setting. This is, again, when you're talking about context, you're talking about an objective standard. This court many times has discounted and rejected the need for subjective evidence. It says, you look to if the interrogation reasonably tends to restrain or coerce, sorry, restrain or interfere. In McCullough Environmental, it says, we examine what reasonable inferences an employee could draw from the employer statements, not the employer's intent. In Brown and Root, this court says, an inquiry into the employer's subjective intent mischaracterizes the standard for evaluating employer speech under 8A1. And in Crown Central Petroleum, it is the tendency of the employer's conduct to interfere with the rights of his employees rather than his motives that is controlling. So I think a subjective requirement is, this is foreclosed by this court's precedent in addition to Gissell itself. And so Judge Douglas, not only has countermeasure not been implied in the labor relations context, its application is foreclosed by this court's precedent. And that makes sense for the reasons we discuss in our brief. Why counterman would not, is a poor fit for this context where counterman is all about the risk of chill, chilling protected speech by, when you're prosecuting unprotected speech. And the concern was with how the ordinary citizen would, sorry, how the ordinary citizen would be chilled in his speech. Apple, of course, is not an ordinary citizen. When you're in the employer-employee context, as the Supreme Court pointed out in Gissell, things are different. So I will move on to the confiscation point unless the court has further questions about the interrogation. Confiscation, the main thing I would urge the court to do is watch the video. It's clear in every instance that this was a targeted removal of the union flyers. Shortly after the employees put the flyers on the table, a manager comes into the break room, makes a beeline to the table, takes the flyers, leaves. This was not part of a kind of overall sweep, tidying up the break room. They knew the flyers were there. They knew that that's what they were going to get, and then they left. This is... And again, this is another substantial evidence question. So yes, Apple is correct that it is a legal principle that if the employer is acting pursuant to a generally applicable cleanliness policy, they can remove union flyers if they remove everything else. But substantial evidence supports the finding that Apple was not acting pursuant to such a policy. So are you disputing there was a policy, or just that even if there was a policy, it was selectively enforced? The latter. I think it's perhaps up to question how consistent this policy was. But even if you say, well, they did have a generally consistent policy, that's not how they were acting here. They, again, were directly targeting these flyers. There were other things on the table at the same time that they didn't remove. We talked about the water bottles. We talked about the empty fruit basket. There was no fruit in it at the time. And this may seem a little small. We're arguing about water bottles. But again, this is a factual question, and we're not here to reweigh the evidence. But also the point is that if... Sorry, Apple was saying, well, we're not entirely sure if the water bottles were in use or not. Well, of course, there's no evidence they were sure that the union flyers weren't in use at the time. There were employees in the break room at the time the managers came in and removed the union flyers. And part of the right to communicate with your fellow employees is to do so actively and also passively. There are plenty of cases that talk about distribution being part of the rights under the NLRA and the fact that you can share information with employees by having a flyer out for them to consider or when they have time to consider it is part of that right. This was a... I think there actually was a shift in the policy here. Apple Council says this is distinguishable on those grounds because they treated these union flyers differently than they had treated other material. They came in and photographed the flyers, which there was testimony that that had not happened before. And they not only removed the flyers, they shredded them. Again, testimony that that was not how Apple managers typically handled things left in the break room. Now, Apple says that there was no other written material that was left behind. I'm sorry. I can't remember exactly how they phrased it.  But there was no other written material removed that day. So it's not that they were treating union... It's not that they were being... You know what? I apologize. I've lost my train of thought on this one. Right. This... The solicitation and distribution policy doesn't apply to these union flyers because it applies to third parties. The people putting out the flyers were employees. Talks about working time. This was non-working time. It was in the break room. So, again, I think with the confiscation point, look to the video. It shows what's going on here. This is a pretty also straightforward application of settled law, just like the interrogations. I guess a few more points on the interrogations. Apple says, well, it doesn't matter that Vasquez responded evasively because his motivation was one of campaign strategy. But as Apple also recognizes, the employee's subjective response doesn't matter. So they're asking us to look for Vasquez's motivation. But that is not part of the analysis here. The fact that it was a... If you put it, a campaign strategy to keep the union activity secret from the employer, I don't see how that's different from a fear of retaliation if the employer finds out about the union activity before the employees are ready to go public with it themselves. If we agree with your analysis about the flyers, but we disagree about what you consider coercive interrogation, what should the outcome be here? In that circumstances, you would grant enforcement in part and deny enforcement in part, which is certainly nothing unusual. Of course, as you would well expect, I would ask you to affirm on both parts, but certainly that is possible, a possible outcome. What parts of Gladden's testimony were not contradicted by Vasquez? That she typically... Well, that she approaches employees, she talks to employees on the floor, that was not contradicted. The judge actually says, and I credit Gladden as to this point, that she talks to employees on the floor. Of course, we don't have that kind of crediting as to the statement we were discussing before Judge Willett. But the fact that Gladden has a habit of talking to employees doesn't save them because she doesn't have a habit of asking employees about their protected activity, about their union views. There is testimony that she and Vasquez have discussion about biking around the city or bars they like to go to. Clearly, what she did here was a departure from that. And this is not just one question. We talked a little bit before about some of these other cases that are more probing. It was a series of questions. She says, hey, I heard you had a conversation with HR. What was that about? Vasquez says it was about advocating for higher wages. She says, did you talk to other employees about that? He says, yes. She says, how many other employees did you talk to? He demurs. She says, what do you think about this unionization? So it does keep going along. It is more probing than in Bazutos, which was just a kind of. Kind of hearkening back to our Tesla case from a year ago, from 2024. And we were in that case kind of citing the Supreme Court when talking about the substantiality of evidence. And it has to take into account things in the record that kind of fairly detract from that weight. And to survive substantial evidence review, the board has got to consider contradictory evidence or evidence that tends to, well, from which conflicting inferences could be drawn. Sure. And which led to my question about whether the board should have considered portions of Gladden's testimony that were not contradicted by Vasquez. Yeah, I don't think there's anything that helps Apple there. Because, right, the parts that weren't contradicted are not points that would lead to a conclusion of, you know, contrary to a coercive interrogation. Thank you for the question. May it please the court. Matt Holder for Intervenor Communications Workers of America in support of the National Labor Relations Board. One thing I'd like to start with is the application of countermen outside of the criminal context. So there's some discussion about cases involving defamation. Defamation, like criminal conduct, involves a mental state. What are you aware of? In defamation, you ask for are you aware or should you be aware of the falsity of a statement. In criminal law, you're supposed to look at what is the intent of the accused when they engage in this conduct. So there is some overlap between at least defamation and criminal law that is not present here. Because, you know, the type of speech that we're looking at here are questions, and there's no fact or position or any type of conduct protected by Section 10 of the Act's speech protections for employers. When the employer is questioning an employee, it solely puts them on the spot. And in this case, while you don't have an employer questioning somebody in a closed room, Gladden and Vasquez are alone. Vasquez is the only person being subjected to this questioning, and the store is empty. So you do have an employee being put on the spot and being subjected to a barrage of questions. And the Fifth Circuit has held that questions about wages are such a nature that they're a course of interrogation. Questions about how do you feel about the union are the same. And a concept that I think should be borne in mind is what in the Supreme Court's decision of exchange parts was called the fist in the velvet glove, that by talking about something, you imply the ability to take it away. In exchange parts, a bonus was granted when the employer should not have done so because of the status quo maintained by the law. But they did so anyway, which the Supreme Court recognized implied to employees that wages and benefits could be taken away. So by being questioned about wages, by being questioned about how he feels about the union, there is an implied threat and therefore implied coercion there that I think is mindful and the court should recognize. And as to the enforcement of the cleanliness policy in the break room, I again join with the board in just stressing that the video should be watched, that it basically shows an almost cause and effect relationship between the materials being distributed and the managers picking up the materials. Thank you, Your Honors. As Mr. Heller noted, their argument on coercive interrogation really just turns on three of the factors, nature of the information sought, the fact that a supervisor was asking the question, and the employee's evasive response. On the first two, I'm going to reiterate that Delco Remy is exactly on point. The same question, what do you think the employer should do was asked by a supervisor. If that's not a troubling reason for finding a coercive interrogation in that case, then I can't see how those two points cut in the board's favor here. Federal mogul is another Fifth Circuit case that involved a similar question and many more questions by a supervisor. And this court said those questions didn't weigh in favor of a coercive interrogation, finding and again reversed the board. On evasiveness, at one point later in his argument, Mr. Heller said that employee's subjective response doesn't matter. Well, okay, I'm happy to accept that principle, but then you can't rely on the evasive answer of this particular employee's response to carry all of the weight in this case, especially given what we know about the motivation of that response. And contrary to the speculation of the board, there's no reason to think that merely wanting to delay your campaign for six days is because you fear repercussion. I don't even understand how that would be. Like, we feel repercussion today, but in six days, that will have dissipated. That doesn't make any sense. There are lots of reasons why a union might not be ready to start its campaign on a given day. It, you know, prints out flyers, for example. It creates bracelets. It does a lot of things to prepare for a launch. So all of these objective factors point in our favor, I would submit, in this case. Mr. Heller said the facts here are not unusual, but I don't know what case he thinks is most on point for him. He cited Renew Home Health, a very recent decision from this court. In that case, the employer demanded to see employee text messages. That's not even remotely comparable here. AeroCorp involved questions about who had signed the union cards outside of the employer's building. Harbison involved an employee or supervisor who showed up at the employee's house to ask the question. Those are obviously worlds away from Gladden's casual conversation here. Mr. Heller said that Apple would do the right thing, which, to be clear, was something that Vasquez testified Gladden told him. It's not something that she said she said. He said that Gladden told her that after they had been talking about unions and about how Vasquez didn't want his name associated with the union. So I don't see how you can interpret that statement as being about something other than unions, because that was the topic of conversation that prompted Gladden to say that. And contrary to Mr. Heller's portrayal, I don't see any finding in the ALJ's decision that discredits Gladden's testimony that she also said employees have a right to do these things, to unionize things. The ALJ, in fact, discussed that statement and found it problematic because it asked about the employees' thoughts and feelings. And I think that that, in and of itself, is a failure of substantial evidence, or at least arbitrary and capricious with respect to that evidence. Briefly, on countermen, I just don't think that cases that predate the Supreme Court interpretation of the First Amendment from the lower courts can be construed as precluding application of the Supreme Court's newest instruction on how to apply the First Amendment in a given context. So if the board wants to argue on remand that labor law is different because employers aren't ordinary citizens, I don't know exactly what they would be otherwise, but that would be something for the board to flesh out on remand. It's not something that could be discerned from its actual opinion here, and under the Chenery Doctrine, this court can't supply a rationale, and neither can board counsel, that the board itself did not rely on. Quickly, on the confiscation point, I'm happy for the court to watch the video. I'm sure you already have. Throughout the entire day, people are coming in and out of that break room nonstop. People are removing things from the table and just throwing them away. Usually it's employees cleaning after themselves. There was no flyer. Mr. Heller didn't say otherwise that was left out on the table during the day other than the union flyers, to show that some flyers were treated better than others, and in fact, as I pointed out, the company had enforced its solicitation and distribution policy with respect to Mr. Goebel just the week before, and that policy isn't only about third parties, contrary to what Mr. Heller was implying. It also prohibits employees from using company bulletin boards, and the company here made the determination early on May 15th that leaving out materials on the break room table were comparable, and that's all that the evidence shows, and that is not enough to show discriminatory enforcement. Thank you, Your Honor.